NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
:
HENRY V. VACCARO                        :     Case No. 14-7838 (FLW) (LHG)
                                        :          **OPINION**
            Plaintiff,                  :
                                        :
    v.                                  :
                                        :
JOHN BRANCA,                            :
                                        :
            Defendant.                  :
_____:

This is a defamation action brought by Henry Vacarro ("Plaintiff"), pro se, against John Branca ("Defendant"). Defendant moves to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). For the reasons below, Defendant's motion is granted and Plaintiff's action is dismissed without prejudice.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The following facts are taken from the complaint, except where noted. Plaintiff, an individual living in Ocean, New Jersey, is the manager of Vintage Associates ("Vintage"), a company that owns a large collection of Michael Jackson memorabilia. Compl. at ¶¶ 1–2. Defendant, an individual living in California, is the executor of the Estate of Michael Jackson. Id. at ¶¶ 3, 12. On January 20, 2011, Defendant sued Vintage, along with several other defendants, in California, claiming that they had exploited Defendant's intellectual property. Branca v. Mann, No. CV 11-00584, 2012 U.S. Dist. LEXIS 112574 at 2 (C.D. Cal. Aug. 10,

2012). That suit resulted in a settlement between Vintage and Defendant, the terms of which included a Security Agreement giving the Estate of Michael Jackson a security interest in Vintage's Jackson family memorabilia, Pl.'s Ex. 3 ¶ 2, and a non-disparagement clause restricting both the Estate and Vintage from "saying anything in public that disparages the other side." Pl.'s Ex. 2 at 7-12. The California court retained jurisdiction to enforce the terms of the settlement. Id. at 7-13 to 16.

In May of 2013, a New York corporation, Core Media, expressed an interest in purchasing Vintage's Michael Jackson memorabilia. Compl. at ¶ 11. Before Vintage and Core Media agreed to any sale, however, Defendant allegedly sent an email to Core Media claiming that Plaintiff was guilty of fraud and bankrupt. Id. at ¶ 13. Core Media subsequently declined to do business with Plaintiff, and Plaintiff alleges that this decision was due to Defendant's email. Id. at ¶ 21.

Plaintiff initiated the present action on December 17, 2014, asserting one count of defamation. Id. at ¶ 18–25. Specifically, Plaintiff alleges that Defendant intentionally, recklessly, or negligently made false statements to Core Media, and that those statements were the proximate cause of Plaintiff's "destroyed . . . business opportunity" with Core Media. Id. at ¶ 21–25. On January 23, 2015, Defendant moved for dismissal under Fed. R. Civ. P. 12(b)(2), claiming that this Court lacks personal jurisdiction over Defendant. For the following reasons, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is granted, and the case is dismissed without prejudice.

**DISCUSSION**

    **A. Personal Jurisdiction**

The instant motion asserts that this Court lacks personal jurisdiction over Defendant. When it is challenged, the plaintiff bears the burden of establishing personal jurisdiction. Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001). However, because this Court has not held an evidentiary hearing on the motion to dismiss, the plaintiff must only show a prima facie case of personal jurisdiction, and Plaintiff's allegations must be taken as true. Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004). In addition to the allegations in the Complaint, the Court may also consider evidence given by sworn affidavits. Patterson by Patterson v. F.B.I., 893 F.2d 595, 604 (3d Cir. 1990).

A federal court sitting in diversity must follow a two-step inquiry to determine personal jurisdiction: first, the court must apply the forum state's long-arm statute, then the court must apply the Due Process Clause of the United States Constitution. IMO Industries, Inc. v. Kiekert AG, 155 F.3d 254, 258–59 (3d Cir. 1998). In this District, this inquiry is reduced to a single step, as New Jersey's long-arm statute permits jurisdiction to the full extent of the Due Process Clause. DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 284 (3d Cir. 1981). Therefore, the Court has personal jurisdiction if jurisdiction is in accord with the Due Process Clause.

The Due Process Clause allows a court to exercise personal jurisdiction over a defendant if the defendant has "certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). There are three types of personal jurisdiction: general jurisdiction, specific jurisdiction, and effects-based jurisdiction, also known as "Calder jurisdiction." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414–15 & n. 9 (1984); Calder v. Jones, 465 U.S. 783 (1984). General jurisdiction permits a court to hear any claim against an individual, regardless of whether the claim is related to that individual's activities in the forum.

Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011).  Specific jurisdiction permits a court to hear claims related to the contacts a defendant has with the forum.  Helicopteros, 466 U.S. at 414 n. 8 (1983).  Finally, Calder jurisdiction permits a court to establish jurisdiction over non-resident defendants who commit intentional torts that have effects inside the court's forum state, even if specific jurisdiction could not normally be extended over the party in question.  Calder v. Jones, 465 U.S. 783, 789 (1984).  I will address each type of personal jurisdiction in turn.

    1. General Jurisdiction

General jurisdiction refers to a court's power to "hear any and all claims" against an out-of-state entity or person when its "affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State." Daimler AG v. Bauman, 134 S. Ct. 746, 751 (2014); see also Chavez v. Dole Food Co., Inc., __ F.3d __, 2015 WL 4732386 at *7 (3d Cir. Aug. 11, 2015).  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." Goodyear, 131 S. Ct. at 2853. Here, the Complaint alleges that Defendant is a citizen of California, and has a business address in that state. Compl. ¶ 3. Moreover, Plaintiff has provided no evidence, nor even alleges, that Defendant owns any real property, maintains a bank account, or conducts a significant portion of his business in New Jersey. Defendant asserts, correctly, that in the absence of such allegations, this Court cannot exercise general jurisdiction over Defendant.

Nonetheless, Plaintiff alleges that Defendant has sufficient "minimum contacts" to comport with the due process requirement of "fair play and substantial justice." *Id.* at 6. Specifically, Plaintiff alleges contacts between Defendant and New Jersey which can be placed in three groups: the contacts arising from the settlement agreement between Defendant and

Vintage, which involves property located in New Jersey, including a letters sent between Defendant's attorneys and Vintage's attorneys regarding the enforcement of the settlement agreement; Defendant's involvement in unrelated suits and contracts in New Jersey; and Defendant's email to Core Media in New York.[1] Pl.'s Opp. 2–5.

However, the contacts alleged by Plaintiff are far too tenuous to permit this Court to have general jurisdiction over Defendant. In comparison, in one case, where the Defendant was a Pennsylvania farm, the court found that "the occasional presence of Our Farm's racehorses in New Jersey and the periodic business Our Farm conducts with New Jersey trainers" was too

---

[1] Specifically, Plaintiff alleges the following contacts:
- Defendant "consented to a settlement agreement with the plaintiff, a resident of New Jersey." I note that this is factually incorrect: Plaintiff was not a party to the lawsuit, and the settlement agreement was between Defendant and Vintage. Nonetheless, the subject of that agreement involved the right of Vintage, the company Plaintiff manages, to sell goods located in New Jersey. In addition, Defendant has a lien on Vintage's property, which is located in New Jersey, and the collateral for the settlement agreement between is located in New Jersey. Further, Defendant corresponded with Plaintiff directly on May 22, 2013 and corresponded with the attorney of the company that Plaintiff manages. In addition, Plaintiff's bankruptcy attorney corresponded with Defendant's attorneys regarding the Jackson memorabilia in connection with Plaintiff's petition for bankruptcy.
- Defendant was the beneficiary of a contract with Eddie Cascio, a resident of New Jersey; Defendant filed a suit against a New Jersey company named GirlyTops Inc.; and Defendant was involved in a suit with a New Jersey company named AllGood Entertainment Inc.
- Defendant, as co-executor of the Estate of Michael Jackson, sent an email into New York that interfered with Vintage's attempt to sell Michael Jackson Memorabilia.
  [Pl. Br. at 3–5]

In addition, Plaintiff filed a supplemental affidavit, claiming that an employee of Core Media is a New Jersey resident; that Plaintiff was in contact with Defendant's attorney; and that Vintage's attorney was in contact with Defendant's attorney.  Defendant contests the supplemental affidavit, claiming it is an argumentative sur-reply without permission, violating Civ. L.R. 7.1(d)(6). Since Defendant's motion will be granted regardless of the contacts alleged in the supplemental affidavit, I assume that the information in Plaintiff's supplemental affidavit may be used in deciding this motion.

5

sporadic to permit the exercise of general jurisdiction. *Exton v. Our Farm, Inc.*, 943 F. Supp. 432, 440 (D.N.J. 1996). Similarly, where a plaintiff offered "various invoices" to establish that the defendant "ha[d] conducted business in New Jersey," over a number of years, this Court held that the fact that the Defendant "conducted some business in New Jersey . . . is not sufficient to meet the due process requirements under general jurisdiction." *JWQ Cabinetry, Inc. v. Granada Wood & Cabinets, Inc.*, No. CIV.A. 13-4110 FLW, 2014 WL 2050267, at *3 (D.N.J. May 19, 2014).[2]

Here, the contacts alleged by Plaintiff do not even show that Defendant conducted "periodic" business in New Jersey, or that Defendant had conducted business over multiple years. Instead, Plaintiff alleges that Defendant was involved in a single contract with an unrelated New Jersey resident, and was involved in lawsuits against other New Jersey residents. These contacts simply are not sufficient to meet the due process requirements of general jurisdiction.

Moreover, Defendant's contacts with New Jersey stemming from the previous lawsuit with Vintage do not meet the general jurisdiction requirements. The previous lawsuit took place in the Central District of California, and that court retained jurisdiction to enforce the settlement. Furthermore, the only contact with New Jersey which arose out of the settlement is the fact that

---

[2] Although these cases involve corporate defendants, similar analyses have been conducted with respect to individual defendants. *See, e.g.*, *Remick v. Manfredy*, 52 F. Supp. 452, 458 (E.D. Pa. 1999) (evaluating whether individual's use of internet advertising constitutes sufficient contact with state for general jurisdiction); *Am. Centennial Ins. Co. v. Handal*, 901 F. Supp. 892, 898 (D.N.J. 1995) (individual's three business trips to New Jersey were insufficient to establish general jurisdiction); *Glospie v. Castiglia*, Civ. No. 211-6939 KM MCA, 2014 WL 866458, at *6 (D.N.J. Mar. 5, 2014) (finding that individual defendant did not have "continuous and systematic contacts with the forum state.").

the settlement agreement gave Defendant a security interest in the Jackson Family memorabilia, which is currently located in New Jersey.

Plaintiff, however, focuses on two letters. The first letter, dated May 22, 2013, is a "cease and desist" letter from the attorneys for the Estate of Michael Jackson, informing Plaintiff that his and Vintage's attempts to license, sell, or otherwise exploit recordings associated with Michael Jackson were in violation of the settlement agreement. *See* Pl. Ex. 6. The second letter, from Vintage's attorney, confirms that neither Vintage or Plaintiff would attempt to solicit the sale of intellectual property alleged to belong to the Estate of Michael Jackson. Pl. Ex. 7. Assuming that the attorneys for the Estate of Michael Jackson may be considered representatives of Defendant, merely sending a single letter will not generally be sufficient to create general jurisdiction. See Early Learning Res., LLC v. Sebel Furniture Ltd., No. CIV. 10-6335 NLH JS, 2011 WL 4593775, at *4 (D.N.J. Sept. 30, 2011) (holding that single "cease-and-desist" letter sent "does not come close to the required 'continuous and systematic' contacts); *see also* . Furthermore, the response of Vintage's attorney cannot be considered an action of Defendant in the New Jersey. Again, these contacts simply do not meet the standard required for this Court to exercise general jurisdiction, particularly as any dispute over the settlement agreement is subject to the jurisdiction of the California court.

Finally, Defendant's email to Core Media does not establish any contact with New Jersey for the purposes of general jurisdiction. Core Media is a New York company; thus, there is no contact with New Jersey based on that email.

Thus, this Court lacks general jurisdiction over Defendant.

2. Specific Jurisdiction

Specific jurisdiction is the extension of personal jurisdiction over claims related directly to the Defendant's connection to the forum state. When examining specific jurisdiction, a court must undertake a three-part inquiry: first, the defendant must have "purposefully directed its activities at the forum"; second, the litigation must "arise out of or relate to" the activities directed at the forum; and third, if the first and second requirements are met, the court must consider whether the exercise of jurisdiction is fair and just. O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 317 (3d Cir. 2007). Personal jurisdiction is a totality-of-the-circumstances analysis; thus while this Court will evaluate only those contacts that the litigation arises out of and are deliberately targeted at the forum, the constitutional touchstone remains whether sufficient minimum contacts exist. Burger King, 471 U.S. 462, 473–74 (1984).

The first prong of the test for specific jurisdiction requires Defendant to have purposefully directed his activities at New Jersey. The "purposefully directed" contacts must be created by the defendant himself with the forum state, not by the Plaintiff or a third party. Walden v. Fiore, 134 S. Ct. 1115, 1122 (2014). The court must bear in mind that the defendant must have "'purposefully avail[ed] [himself] of the privilege of conducting activities within the forum'" before specific jurisdiction arises. O'Connor, 496 F.3d at 317 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

Contact with a state's citizens that takes place outside of the state is not a purposefully directed contact with the forum. Id. For instance, the court in O'Connor held that the independent decision of Pennsylvanian plaintiffs to visit a hotel in the Barbados did not constitute the deliberate targeting of Pennsylvania by the hotel. Id. at 318. However, the hotel

8

later sent a letter to the plaintiff's Pennsylvania home soliciting their return to the hotel. Id. The court held that the hotel's letter constituted deliberate targeting of Pennsylvania. Id.

With regard to the second prong of the test, litigation "arises out of" a contact if two requirements are satisfied: first, "but-for" the activity, the litigation would not have arisen, and second, the jurisdictional exposure resulting from a contact must be closely tailored to the contact's substantive obligations. O'Connor, 496 F.3d at 323.

As discussed above, there are three types of contacts between Defendant and New Jersey: Defendant's contacts arising from the settlement agreement with Vintage, Defendant's involvement in unrelated suits and contracts in New Jersey, and Defendant's message to Core Media in New York. None of these contacts are sufficient for this court to exercise specific jurisdiction.

As an initial matter, Defendant's message to Core Media fails the "deliberate targeting" prong. Core Media is a New York company; an email sent to it constitutes deliberate targeting of New York, not New Jersey.[3] See O'Connor, 496 F.3d at 318. Next, Defendant's participation in contracts and lawsuits in New Jersey do not meet the "arising out of" prong, as there is no allegation that these lawsuits and contracts have any relationship to the present defamation action.

Finally, the alleged contacts relating to the settlement agreement could constitute the "deliberate targeting" of New Jersey. While "[t]he mere existence of a contract is insufficient to establish minimum contacts" the "prior negotiations and contemplated future consequences,

---

[3] As mentioned above, Plaintiff has alleged in his supplemental affidavit that there is a New Jersey resident employed by Core Media. That cannot, however, form the basis for personal jurisdiction in New Jersey, because a defendant cannot "be haled into a jurisdiction solely as a result of . . . the 'unilateral activity of another party or third person.'" Burger King, 471 U.S. at 475 (citing Helicopteros, 466 U.S. at 417).

along with the terms of the contract and the parties' actual course of dealing" may create sufficient contacts within a state for specific jurisdiction. Budget Blinds, Inc. v. White, 536 F.3d 244, 261 (3d Cir. 2008). Here, the agreement gave Defendant a security interest in Vintage's property, which is held in New Jersey. In addition, as described above, attorneys for the Estate of Michael Jackson contacted Plaintiff with respect to his allegedly attempting to sell intellectual property belonging to the Estate of Michael Jackson, in violation of the settlement agreement, and Vintage's attorney, in turn, responded to confirm Plaintiff's compliance with the settlement agreement. On their face, the security interest and the letters could, potentially, constitute a "deliberate targeting" of New Jersey.

There are, however, two significant obstacles to Plaintiff's position. First, the California court retained jurisdiction to enforce the terms of the settlement. Pl's Ex. 2 at 7-13 to 16. Thus, Defendant did not "purposefully avail [himself] of the privilege of conducting activities within" New Jersey; rather, the Defendant's reasonable expectation would have been to litigate any dispute in California. Second, and more significantly, this suit does not "arise out of" the settlement agreement. Although a casual observer might think that the mutual non-disparagement clause is applicable here, nowhere in the Complaint does Plaintiff allege that this action is based on a breach of the settlement agreement – for good reason. Plaintiff was not a party to the California lawsuit; the disparagement clause thus would not apply to him, personally, but only to Vintage.

Furthermore, neither the correspondence between Defendant's attorney and Plaintiff, nor the correspondence between Vintage's attorney and Defendant's attorneys, are related to the alleged defamation in this case. Indeed, both letters were sent prior to the alleged defamation,

and both refer only to Plaintiff's actions allegedly in violation of the settlement agreement. The present litigation therefore cannot be said to have "arisen out of" these letters.

Thus, none of the contacts alleged by Plaintiff are sufficient to permit this Court to exercise specific jurisdiction over Defendant in this litigation.

3. Calder Jurisdiction

Because Defendant's contacts with the forum are insufficient to establish specific personal jurisdiction, I "must consider whether the application of Calder v. Jones can change the outcome." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 108 (3d Cir. 2004). Calder established an effects-based test, by which a forum may establish jurisdiction over non-resident defendants who commit intentional torts that have effects inside the forum. Calder v. Jones, 465 U.S. 783, 789 (1984). The Calder test requires the plaintiff to demonstrate that "(1) [t]he defendant committed an intentional tort; (2) [t]he plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; and (3) [t]he defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." Marten v. Godwin, 499 F.3d 290, 297 (3d Cir. 2007). Since I assume for the purposes of this motion that Defendant made a defamatory statement, and Plaintiff is located in New Jersey and so felt the harm in this state, Plaintiff's claim to personal jurisdiction rises or falls based upon the third prong of the test being satisfied.

To demonstrate that Defendant expressly aimed his tortious conduct at New Jersey, Plaintiff must show Defendant "manifest[ed] behavior intentionally targeted at and focused on" New Jersey. IMO Indus. v. Kiekert AG, 155 F.3d 254, 265 (3d Cir. 1998). That is, Defendant must have performed "some type of entry" into the state. IMO, 155 F.3d at 265. Generally, for "entry" into the state to have occurred, the defendant must have performed some "specific

11

activity" which directed the tortious act at the state, such as by broadcasting or distributing the defamatory statement there. Remick v. Manfredy, 238 F.3d 248, 258 (3d Cir. 2011); see Calder, 465 U.S. at 789 (magazine containing defamatory state had "largest circulation" in California); Indianapolis Colts, 34 F.3d 410, 412 (7th Cir. 1994) (Defendants broadcast material into state); Bank Express International v. Kang, 265 F. Supp. 2d 497, 506 (E.D. Pa. 2003) (no Calder-based jurisdiction in Pennsylvania where defendant made disparaging comments in California to California clients).

     A clear example of a case where the defendant did not expressly aim its action at the forum state may be found in Marten v. Godwin, 499 F.3d 290 (3d Cir. 2007). In Marten, the plaintiff, Marten, was living in Pennsylvania while enrolled in an internet-based pharmacy school located in Kansas. Id. at 293. The school accused Marten of academic misconduct, and Marten sued the school in the Eastern District of Pennsylvania, claiming that the school had defamed him by accusing him of plagiarism. Id. at 294. The Third Circuit affirmed the district court's dismissal of Marten's action for lack of personal jurisdiction. With respect to Calder jurisdiction, the court noted that even if "the defendant could have intentionally defamed the plaintiff and the plaintiff could have felt the bulk of the harm in the forum state," there will be no personal jurisdiction unless the forum state is "the focus of the activities of the defendant out of which the suit arises." Id. at 298. The Circuit Court then held that the defendants had not expressly aimed their allegedly defamatory accusations towards Pennsylvania, because they had not "made defamatory statements or sent defamatory material to anyone in Pennsylvania." Id. Accordingly, Marten failed to show "a deliberate targeting of Pennsylvania." Id.

     This case involves substantially the same facts as Marten. As Defendant points out in its Reply at 3, Plaintiff has not alleged that Defendant published, distributed, or sent its defamatory

12

email to any person in New Jersey. Defendant committed the alleged tort by sending an email to New York, not New Jersey, and thus has not "expressly aimed" its conduct at New Jersey. Without expressly targeting New Jersey for the dissemination of the allegedly defaming statements, the location of the effects of the tort cannot be a basis for jurisdiction. This Court therefore does not have <u>Calder</u> jurisdiction.

**CONCLUSION**

For the reasons expressed herein, Defendant's motion to dismiss for lack of personal jurisdiction is granted. The case therefore is dismissed without prejudice. An appropriate order shall follow.

Date: August 13, 2015

                                                                                                  /s/ Freda L. Wolfson
                                                                                                  Hon. Freda L. Wolfson, U.S.D.J.